En el Tribunal Supremo de Puerto Rico

| | |
|---|---|
| Rafael Dávila y Benjamín Rivera<br>    Querellantes-Recurridos<br><br>    V.<br><br>Antilles Shipping, Inc.<br><br>    Querellado-Recurrente | Certiorari<br><br>99TSPR-12 |

Número del Caso: CE-94-682

Abogados de la Parte Peticionaria: Lcda. Joanna Bocanegra Ocasio

Abogados de la Parte Recurrida: Lcdo. Luis H. Sánchez Carlo

Abogados de la Parte Interventora:

Tribunal de Instancia: Superior San Juan

Juez del Tribunal de Primera Instancia: Hon. Gilberto Gierbolini

Tribunal de circuito de Apelaciones:

Juez Ponente:

Fecha: 2/12/1999

Materia: Salarios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

Rafael Dávila y Benjamín
Rivera

     Querellantes-Recurridos

        vs.               CE-94-682        CERTIORARI

Antilles Shipping, Inc.

     Querellado-Recurrente

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 12 de febrero de 1999

El presente caso nos da la oportunidad de examinar y _delimitar_ nuestra facultad para revisar, vía certiorari, _resoluciones interlocutorias_ dictadas en el seno de un procedimiento sumario de reclamación de salarios instado al amparo de la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 L.P.R.A. secs. 3118 _et seq_. Tenemos la oportunidad, además, de aclarar cuáles son las limitaciones que el legislador impuso a las partes en cuanto al uso de los mecanismos de descubrimiento de prueba dentro de dicho procedimiento sumario.

I

El 21 de diciembre de 1993, los recurridos, Rafael Dávila y Benjamín Rivera, radicaron una querella contra su patrono, Antilles Shipping, Inc., ante el entonces Tribunal Superior de Puerto Rico, Sala de San Juan. Mediante la misma, los querellantes reclamaron el pago de un determinado número de horas extras trabajadas y no remuneradas por el patrono. Dicha reclamación fue instada al amparo de las disposiciones de la Ley Núm. 2 de 17 de octubre de 1961, según enmendada[1], la cual, como es sabido, establece un procedimiento sumario de reclamación de salarios.

Con fecha de 17 de febrero de 1994, los querellantes notificaron a su patrono, Antilles Shipping, un pliego de interrogatorio que fue contestado por éste en mayo de 1994. Tal como requería la cuarta pregunta del interrogatorio, el querellado expuso en su contestación un breve resumen de lo que declararían, en la vista en su fondo del caso, algunos de sus posibles testigos, entre ellos la Sra. Mayra Pérez y la Srta. Ana Sánchez.

El 16 de agosto de 1994, la parte querellada recibió la notificación de una "Moción Solicitando Autorización para Toma de Deposición", presentada por los querellantes, en la cual solicitaban del tribunal de instancia autorización para deponer a la Sra. Mayra Pérez y a la Srta. Ana Sánchez, contralor y agente de abordaje de Antilles Shipping respectivamente.[2] El tribunal de instancia dictó

---

[1] 32 L.P.R.A. secs. 3118 et seq.

[2] En dicha moción, los querellantes informaron al tribunal de instancia que el co-querellante Benjamín Rivera había sometido un caso independiente del de reclamación de salarios por horas extras, en el que alegaba haber sido despedido por razón de haber sometido dicha reclamación. Alegaron los querellantes que tenían interés en deponer a las Sras. Pérez y Sánchez tanto para el caso de discrimen instado por el Sr. Rivera como para el caso de reclamación sumaria de horas extras. Explica

una orden, el 22 de agosto de 1994, autorizando las deposiciones solicitadas; ello, sin contar con el beneficio de un escrito de oposición a la expedición de la orden por parte de la querellada.

El 14 de septiembre de 1994, Antilles Shipping radicó ante el foro de instancia una "Moción Solicitando el Relevo de la Orden Autorizando Toma de Deposición", al amparo de la Regla 49.2 inciso 6 de Procedimiento Civil[3]. Debido a que dicha moción no interrumpe el término de 30 días previsto para radicar el recurso de certiorari, el 23 de septiembre de 1994 la parte querellada radicó ante nos este recurso alegando que:

> "Conforme lo dispuesto en la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 L.P.R.A. 3118, erró el Tribunal Superior al autorizar la toma de deposición a la Sra. Mayra Pérez y Srta. Ana Sánchez, habiendo los querellantes-recurridos seleccionado el interrogatorio como el mecanismo de descubrimiento a utilizar, y en efecto notificado un interrogatorio a la querellada-recurrente."

Concedimos a los recurridos un término de veinte (20) días para que mostraran causa por la cual no debíamos expedir el auto solicitado y dictar sentencia revocatoria de la orden recurrida. Igualmente, en auxilio de nuestra jurisdicción, ordenamos la paralización de los procedimientos a nivel de instancia.

---

la moción que la representación legal de la querellada les había informado que, debido a que la reclamación de salarios se había sometido al amparo de la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 L.P.R.A. secs. 3118 et seq., la deposición debía limitarse al caso del despido, ya que en el procedimiento sumario de reclamación de horas extras ya se había notificado y contestado un interrogatorio. Sin fundamentos adicionales, la parte querellada solicitó al Tribunal que no autorizara la deposición de las posibles testigos citadas.

En cumplimiento de la orden de mostrar causa emitida, los querellantes recurridos comparecieron ante este Tribunal. En su comparecencia alega la parte querellante que este Tribunal carece de jurisdicción para revisar una orden interlocutoria emitida por un tribunal de instancia en el seno de un procedimiento de reclamación de salarios instado bajo la Ley Núm. 2 de 17 de octubre de 1961, según enmendada[4], cuya esencia es su carácter sumario. Arguyen, como fundamento, que la intención legislativa al aprobar la citada Ley fue vedar la revisión mediante certiorari de las órdenes interlocutorias dictadas durante un procedimiento sumario de reclamaciones laborales; ello, porque dicho recurso podría extender de tal forma el proceso que se eliminaría su carácter sumario esencial. Por todo lo anterior, concluyen los querellantes recurridos que un litigante que desee revisar una orden interlocutoria que le causa un perjuicio sustancial dictada en el seno del procedimiento sumario instituido por la Ley Núm. 2[5], tendrá que esperar hasta que se dicte la sentencia que ponga fin al caso. Según ellos, "[l]a Ley Núm. 2 posterga la revisión de las órdenes interlocutorias, con el propósito de acelerar la resolución de las reclamaciones de los obreros o empleados".

---

[3] Regla 49.2 inciso 6 de las de Procedimiento Civil de 1979, 32 L.P.R.A. Ap. III R. 49.2 (6).

[4] 32 L.P.R.A. secs. 3118 et seq.

La querellada peticionaria presentó ante nos una "Réplica" al escrito mostrando causa radicado por los recurridos. En ella, Antilles Shipping argumenta que no hay nada en el articulado de la Ley Núm. 2[6] que sugiera que una parte está impedida de recurrir por vía de certiorari para solicitar la revisión de una resolución u orden interlocutoria dictada por el foro de instancia. A base de ello, la parte peticionaria nos solicita que expidamos el auto de certiorari solicitado y revoquemos la resolución recurrida.

El 31 de marzo de 1995, compareció ante nos la parte querellante recurrida solicitando de este Tribunal que emitiera la resolución disponiendo del certiorari que estamos considerando o, en la alternativa, aclarara los términos de la paralización de los procedimientos de instancia que habíamos decretado mediante la resolución de 6 de octubre de 1994. En apoyo a su tesis de que el recurso de certiorari contra resoluciones interlocutorias no debe estar disponible en los procedimientos bajo la Ley Núm. 2[7], los querellantes alegan que este caso es un ejemplo de las dilaciones de los procesos de revisión y que, precisamente para evitar dichas demoras, la citada Ley no le confirió jurisdicción a este Tribunal para revisar órdenes interlocutorias.

---

[5] Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 L.P.R.A. secs. 3118 et seq.
[6] Ibid.
[7] Ibid.

A tenor con lo anteriormente expuesto, tenemos que las controversias ante nos se circunscriben a dos cuestiones:

1. En primer lugar, si los tribunales apelativos --este Tribunal en la fecha de la radicación del recurso y el Tribunal de Circuito de Apelaciones en la actualidad-- deben autolimitar su facultad para revisar una resolución u orden interlocutoria dictada por un tribunal de instancia en el seno del procedimiento sumario de reclamación de salarios instituido por la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 L.P.R.A. secs. 3118 et seq;

2. En el caso de que decidamos revisar y entremos a resolver el recurso en sus méritos, si procede o no la toma de una deposición a los dos testigos de la parte querellada toda vez que ésta ya contestó un pliego de interrogatorio que los querellantes le notificaron.

Estando en condiciones de resolver el recurso radicado, procedemos a así hacerlo.


II

Debe mantenerse presente, de entrada, que las Reglas de Procedimiento Civil de 1979, vigentes al momento de la radicación del recurso de autos, establecían, en las Reglas 53.1 y 53.3, 32 L.P.R.A. Ap. III R. 53.1 y R. 53.3, que el Tribunal Supremo tenía jurisdicción para

resolver recursos de revisión presentados contra sentencias dictadas por el Tribunal Superior.[8]

Por otro lado, la Ley de la Judicatura aplicable, Ley Núm. 11 de 24 de julio de 1952, según enmendada[9], establecía en su Sección 37-1, incisos (d) y (e)[10], que el Tribunal Supremo podría revisar mediante certiorari, a ser librado a su discreción, tanto las sentencias como cualquier resolución u orden interlocutoria dictada por el Tribunal Superior.[11]

De todo lo anterior se deriva que el legislador ha querido otorgar a los tribunales apelativos --en el momento de los hechos a este Tribunal y posteriormente al Tribunal de Circuito de Apelaciones-- la capacidad para

---

[8] Las Reglas aplicables al recurso de autos son la Reglas de Procedimiento Civil aprobadas en 1979 y enmendadas mediante la Ley Núm. 143 de 18 de julio de 1986 y Ley Núm. 108 de 7 de diciembre de 1993. Sin embargo no aplican al caso las enmiendas posteriores a la radicación del recurso ante nuestra consideración introducidas por la Ley Núm. 249 de 25 de diciembre de 1995 y que entraron en vigor en mayo de 1996. A partir de esta última enmienda, la Regla 53.1 establece que el tribunal competente para revisar vía certiorari las resoluciones de los tribunales de instancia es el Tribunal de Circuito de Apelaciones.

[9] La última enmienda aplicable es la introducida por la Ley Núm. 11 de 2 de junio de 1993, que entró en vigor a partir de los siguientes 90 días.

[10] 4 L.P.R.A. sec. 37-1.

[11] La Ley de la Judicatura vigente en la actualidad, Plan de Reorganización Núm. 1(a) de la Rama Judicial, de 28 de julio de 1994, según enmendada por la Ley Núm. 248 de 25 de diciembre de 1995, 4 L.P.R.A. sec. 22 et seq., dispone que será el Tribunal de Circuito de Apelaciones, y no el Tribunal Supremo, el competente para revisar, vía certiorari, cualquier resolución interlocutoria dictada por los tribunales de instancia.

revisar, mediante certiorari, las resoluciones interlocutorias dictadas por los tribunales de instancia.

En torno a ello, el profesor Hernández Colón señala, en su tratado sobre derecho procesal civil, que la ley no favorece las revisiones de resoluciones interlocutorias porque ello afecta e interrumpe el desenvolvimiento lógico, ordenado y orgánico del proceso.[12] Ahora bien, añade el profesor Hernández Colón que, a pesar de lo anterior, en situaciones en que mediante dichas resoluciones interlocutorias se violen derechos de las partes o se pueda afectar el resultado final del caso, la economía procesal reclama que se resuelvan dichas cuestiones sin esperar a la sentencia final.[13]

---

[12] En ese mismo sentido se ha pronunciado el Tribunal Supremo de los Estados Unidos, al resolver que:

> "In the absence of clear and explicit authorization by Congress, piecemeal appellate review is not favored. Switzerland Cheese Ass'n v. Hone's Market, supra, 385 U.S., at 24, 87 S.Ct., at 194, 17 L.Ed.2d. 23, and this Court above all others must limit its review of interlocutory orders. Hamilton-Brown Shoe Co. v. Wolf Brothers, 240 U.S. 251, 258, 36 S.Ct. 269, 271, 60 L.Ed. 629 (1916)." (Énfasis suplido.) Goldstein v. A. Cox et al., 396 U.S. 471 (1970).

Es importante tener en cuenta que la legislación vigente en el ámbito federal establece que los tribunales apelativos únicamente tendrán jurisdicción sobre las decisiones finales emitidas por los tribunales inferiores; ello, con unas mínimas y específicas excepciones. Véase: Act June 25, 1948, 62 Stat. 869, as amended, 28 U.S.C.A. secs. 1291, 1292 y Act Apr. 2, 1982, 96 Stat. 37, as amended, 28 U.S.C.A. 1295 así como su jurisprudencia interpretativa. FirsTier Mortg. Co. v. Investors Mortg. Ins. Co, 489 U.S. 269 (1991); J.B. Stringfellow v. Concerned Neighbors in action et al, 480

Ahora bien, la Ley Núm. 2 de 17 de octubre de 1961[14] establece un procedimiento sumario para los casos de reclamaciones instadas por obreros y empleados contra sus patronos por servicios prestados; así, la regulación contenida en los preceptos dispositivos de dicha Ley responden a la política pública de abreviar el procedimiento de forma que sea lo menos oneroso posible para el obrero. Tanto la breve exposición de motivos como el historial legislativo de dicha Ley destacan, con carácter especial, la naturaleza sumaria del proceso y establecen que el propósito de esta medida legislativa es facilitar la rapidez y celeridad de la resolución de las reclamaciones; propósito al que los tribunales deben dar estricto cumplimiento.[15] Así lo ha reconocido nuestra

---

U.S. 370 (1987); Mitchell v. Forsyth, 472 U.S. 511 (1985); Gardner v. Westinghouse Broadcasting Co., 437 U.S. 478 (1978); Coopers & Lybrand v. Livesay, 437 U.S. 463 (1978); Goldstein v. Cox, 396 U.S. 471 (1970). Precisamente en Coopers & Lybrand v. Livesay, supra, el Tribunal Supremo se pronunció como sigue:

> "Federal appellate jurisdiction generally depends on the existence of a decision by the District Court that 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 633 89 L.Ed. 911."

[13] R. Hernández Colón, Práctica Jurídica de Puerto Rico, Derecho Procesal Civil, San Juan, Michie of Puerto Rico, Inc., 1997, pág. 323.

[14] Ibid.

[15] En esos términos se expresaron en múltiples ocasiones los legisladores presentes en la discusión del Proyecto del Senado 194 que da origen a la Ley que analizamos; algunos ejemplos de ello son los siguientes:

jurisprudencia en reiteradas ocasiones. <u>Laundrum Mills</u> v.

<u>Tribunal Superior</u>, 92 D.P.R. 689 (1965); <u>Díaz</u> v. <u>Hotel</u>

<u>Miramar Corp</u>., <u>supra</u>.; <u>Resto Maldonado</u> v. <u>Galarza</u>

<u>Rosario</u>, 117 D.P.R. 458 (1986); <u>Srio. del Trabajo</u> v<u>. J.C.</u>

<u>Penney Co., Inc</u>., 119 D.P.R. 660 (1987); <u>Mercado</u> v. <u>ZETA</u>

<u>Communications, Inc</u>., Opinión y Sentencia de 7 de abril

de 1994; <u>Rivera</u> v. <u>Insular Wire Corp</u>., Opinión y

Sentencia de 24 de mayo de 1996; <u>Santiago Pérez</u> v. <u>Palmas</u>

---

"Como se sabe, esta es una Ley de Reclamaciones de Salarios que <u>la idea es que su trámite sea el más breve posible, o sea que no se dilate como los otros casos</u> ..." (Énfasis suplido.) Diario de Sesiones, 1961, pág. 50, 8 de agosto de 1961.

"<u>El propósito del P. del S. 194 es establecer un procedimiento sumario</u> para los casos de reclamaciones de obreros y empleados contra sus patronos por servicios prestados; ..." (Enfasis suplido.) Diario de Sesiones, 1961, pág. 155, 24 de agosto de 1961.

"<u>El propósito del proyecto es mantener el carácter sumario, rápido</u>, de las reclamaciones de salarios, que no dure tanto como dura un caso ordinario. ..." (Énfasis suplido.) Diario de Sesiones, 1961, pág. 194, 29 de agosto de 1961.

"Creemos que en alguna forma la enmienda [de permitirle al patrono pedir que se estudien las cuestiones que plantea] está en contradicción con el proceso rápido de sumariedad y <u>el propósito de esta medida precisamente es facilitar la rapidez de las reclamaciones</u> ..." (Énfasis suplido.) Diario de Sesiones, 1961, pág. 195, 29 de agosto de 1961.

"Es así y es por esa razón que el propio crecimiento, el auge industrial que ha desarrollado el pueblo de Puerto Rico, <u>el constante crecimiento en el trabajo demanda que tengamos legislación de mayor rapidez para tramitar todo este tipo de reclamaciones.</u>"

del Mar Prop., Opinión y Sentencia de 24 de octubre de 1997. Específicamente, hemos sido insistentes en señalar la importancia de respetar la naturaleza sumaria de este procedimiento de reclamación de salarios y no permitir que las partes desvirtúen dicho carácter especial y sumario. En ese sentido, nos hemos expresado a los efectos de que:

> "La esencia y médula del trámite fijado para casos sobre reclamaciones de salarios consagrado en la Ley Núm. 2 del 17 de octubre de 1961, según enmendada, constituye el procesamiento sumario y su rápida disposición. Desprovisto de esta característica, resulta un procedimiento ordinario más, en el cual la adjudicación final que oportunamente recaiga, resulta incompatible con alcanzar, en su máxima expresión, el mandato legislativo de diligencia en el dictamen judicial." (Énfasis suplido.) Díaz v. Hotel Miramar Corp., 103 D.P.R. 314, 316 (1975).

Acorde con el propósito señalado, la Sección 3 de la Ley Núm. 2 de 17 de octubre de 1961, según enmendada[16], establece que las Reglas de Procedimiento Civil serán aplicables al procedimiento especial estatuido por dicha Ley en todo aquello que no esté en conflicto con las disposiciones específicas de la misma o con el carácter sumario del procedimiento.[17] A través del referido

---

(Énfasis suplido.) Diario de Sesiones, 1961, pág. 201, 29 de agosto de 1961.

[16] 32 L.P.R.A. sec. 3120.

[17] La sección 3 de la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 L.P.R.A. sec. 3120, lee como sigue:

> "En los casos que se tramiten con arreglo a las secs. 3118 a 3132 de este título, se

artículo de ley, el legislador pretendió asegurar que mediante ningún mecanismo pudiera desvirtuarse el carácter sumario y de rápida resolución que impregna todo el procedimiento previsto en la Ley.

Con este marco en mente, debemos resolver si la presentación de un recurso de certiorari contra una resolución interlocutoria dictada en el seno de un procedimiento sumario al amparo de la Ley Núm. 2 es contraria, entra en conflicto, o desvirtúa el carácter sumario que debe imperar en el procedimiento.

Esto es, debemos preguntarnos si la economía procesal, entendida como la necesidad de evitar el paso por todo el proceso judicial cuando se haya cometido un error perjudicial por medio de una resolución interlocutoria, tiene mayor peso que el carácter sumario que los legisladores le imprimieron al proceso instituido por la Ley Núm. 2.[18] Contestamos en la negativa.

Sin duda, la economía procesal es un pilar importante dentro de nuestro sistema procesal civil. Ahora bien, atender dicho principio en los términos que hemos expuesto representaría atentar contra la naturaleza y esencia del procedimiento implementado por la Ley Núm.

---

aplicarán las Reglas de procedimiento Civil en todo aquello que no esté en conflicto con las disposiciones específicas de las mismas o con el carácter sumario del procedimiento establecido por las secs. 3118 a 3132 de este título; ...".
[18] Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 L.P.R.A. secs. 3118 et seq.

2[19]: la sumariedad y celeridad del proceso. Ello, porque lamentablemente la sobrecarga de casos pendientes ante los tribunales apelativos impiden que su resolución sea, como desearíamos, una rápida que no afecte la naturaleza del proceso que analizamos. Bien al contrario, la práctica señala que la revisión de las resoluciones interlocutorias dictadas en el seno de un procedimiento sumario de reclamación de salarios da al traste con la esencia misma de dicho proceso: la sumariedad.[20]

De otro lado, debemos tener en cuenta que las Secciones 12 y 13 de la Ley Núm. 2[21] contienen expresamente los mecanismos de revisión disponibles en el proceso que regula[22] y, en ese sentido, establecen que:

---

[19] Ibid.

[20] En este punto, señalamos y compartimos las palabras del Quinto Tribunal del Circuito de Apelaciones Federal, que en <u>Albatros Shipping Corporation</u> v. <u>R. Stewart</u>, 326 F.2d 208, 211 (5th Cir. 1964) resolvió lo siguiente:
"The prime purpose of the summary judgment procedure is to secure the 'just, speedy and inexpensive determination of any action.' <u>Piecemeal appeals of partial summary judgments under Admiralty Rule 58(d) would completely frustrate the very purpose of the summary judgment rule</u>." (Énfasis suplido.)

[21] Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 L.P.R.A. secs. 3129 y 3120.

[22] En este punto, debemos recordar que esta ley es previa a la Ley de la Judicatura de 1994, Plan de Reorganización Núm. 1(a) de la Rama Judicial, de 28 de julio de 1994. Debido a ello, los recursos y las instancias que disponen los artículos que transcribimos no son los que en la actualidad están disponibles. Así, en <u>Santiago Pérez y otros</u> v. <u>Palmas del Mar Properties, Inc.</u>, <u>supra</u>., este Tribunal hizo un estudio interactivo de las disposiciones

"Las <u>sentencias</u> dictadas en primera instancia por el Tribunal superior podrán ser apeladas o revisadas por el Tribunal Supremo conforme al procedimiento ordinario." (Énfasis suplido.) 32 L.P.R.A. sec. 3129.

"En ningún caso se dará más de una apelación. Las <u>sentencias</u> dictadas por el Tribunal Superior en grado de apelación podrán revisarse por el Tribunal Supremo de Puerto Rico,

---

de Ley Núm. 2, 32 L.P.R.A. secs. 3118 et seq., y las de la Ley de la Judicatura de 1994 y, en ese sentido, dispusimos:

"Como ya hemos visto, ni el Plan de Reorganización Núm. 1, ni las enmiendas posteriores a éste y a las Reglas de Procedimiento Civil, dispusieron de forma específica la forma en que se tramitarían las revisiones de las determinaciones judiciales dimanantes del procedimiento sumario de la Ley Núm. 2, *supra*. Nos corresponde pues, interpretar

y armonizar estas dos importantes piezas legislativas de manera tal que no se desvirtúen ni frustren sus propósitos.

....

De la normativa procesal antes expuesta, surge con meridiana claridad, que luego de las reformas de la Rama Judicial de 1994 y 1995, si se trata de un caso bajo la Ley Núm. 2, *supra*, de la competencia de la Sala Superior del Tribunal de Primera Instancia, en el cual se hubiese dictado una sentencia luego de una vista en su fondo, le aplica el Artículo 4.002(a) de la Ley de la Judicatura de Puerto Rico de 1994, según enmendada, y, por lo tanto, ésta podrá ser revisada por el Tribunal de Circuito mediante el recurso de apelación. Este recurso deberá ser presentado dentro del término jurisdiccional de treinta (30) días, contados desde el archivo en autos de copia de la notificación de la sentencia. Artículos 9.103(a)(1) y 4.002(a) de la Ley de la Judicatura de 1994, según enmendada; Regla 53.1(c) de Procedimiento Civil; sección 12, Ley Núm. 2, *supra*. La sentencia que a su vez emita el Tribunal de Circuito podrá ser revisada por el Tribunal Supremo mediante el recurso discrecional de *certiorari* a ser presentado dentro del término jurisdiccional de treinta (30) días. Artículo 3.002(d)(1) de la Ley de la Judicatura de 1994, según enmendada...."

a su discreción, mediante *certiorari*." (Énfasis suplido.) 32 L.P.R.A. sec. 3130.

De una lectura de los preceptos anteriores se desprende que el legislador no tuvo la intención expresa de que estuviera disponible un mecanismo de revisión directa de las resoluciones interlocutorias. Más aún, en todos los debates celebrados en la Cámara y el Senado en torno al Proyecto del Senado 194 --que dio origen a la Ley que analizamos--, no se hizo mención de la posibilidad de que tales resoluciones interlocutorias fueran revisables. Todo lo anterior abunda a nuestra conclusión de que la revisión de resoluciones interlocutorias es contraria al carácter sumario del procedimiento y que, debido a ello, debemos autolimitar nuestra facultad al efecto.

Es por ello que, aunque la legislación otorga a los tribunales apelativos --antes al Tribunal Supremo y en la actualidad al Tribunal de Circuito de Apelaciones-- la facultad para revisar las resoluciones interlocutorias dictadas por los tribunales de instancia, entendemos que la naturaleza del procedimiento de la Ley Núm. 2[23] reclama que dicha facultad quede limitada en el caso de las resoluciones interlocutorias dictadas dentro de un procedimiento llevado al amparo de dicha Ley.[24] Con

_____

[23] Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 L.P.R.A. secs. 3129 y 3120.

[24] En diferentes ocasiones este Tribunal ha autorestringido su facultad revisora. Véase, en términos generales, E.L.A. v. Aguayo, 80 D.P.R. 552 (1958). Lo

el objetivo de dar estricto cumplimiento al propósito

legislativo de instaurar un procedimiento rápido y

sumario de reclamación de salarios, <u>resolvemos</u> que

nuestra facultad revisora de las resoluciones

interlocutorias que se dicten en el seno de dicho proceso

queda autolimitada de forma que nos abstendremos de

---

hemos hecho en cuanto a la resolución de cuestiones constitucionales, al imponernos el deber de abstenernos de entrar a juzgar la validez constitucional de un estatuto cuando es factible resolver la controversia planteada por otros fundamentos. <u>Zaida Hernández Torres</u> v. <u>Edison Misla</u>, Opinión y Sentencia de 31 de enero de 1992; <u>Fernando Luis Soster</u> v. <u>Echlin of Puerto Rico, Inc.</u>, 126 D.P.R. 781 (1990); <u>P.I.P.</u> v. <u>Comisión Estatal de Elecciones</u>, 120 D.P.R. 580 (1988); <u>Bonilla</u> v. <u>J. Chardón</u>, 118 D.P.R. 599 (1987). También hemos autorrestringido nuestra capacidad revisora en el ámbito administrativo, al exigir el agotamiento de los remedios como requisito previo a la revisión judicial. <u>Guadalupe Pérez</u> v. <u>Saldaña</u>, Opinión y Sentencia de 13 de abril de 1993; <u>Brunet Justiniano</u> v. <u>Hernández Colón</u>, Opinión y Sentencia de 10 de abril de 1992; <u>Gervacio Rivera</u> v. <u>E.L.A.</u>, 121 D.P.R. 582 (1988). Igualmente, hemos autolimitado nuestra facultad de revisión al establecer diferentes requisitos de justiciabilidad. Por un lado, hemos exigido la existencia de una controversia, es decir, la abstención del Tribunal en cuestiones puramente consultivas. <u>Alonso Hernández</u> v. <u>Citibank, N.A.</u>, Opinión y Sentencia de 30 de junio de 1994; <u>David Noriega</u> v. <u>José Ronaldo</u>, Opinión y Sentencia de 24 de junio de 1994; <u>David Noriega</u> v. <u>Hernández Colón</u>, Opinión y Sentencia de 18 de marzo de 1994. Por otro lado, requerimos la legitimación activa de la parte. <u>P.P.D.</u> v. <u>Roselló</u>, Opinión y Sentencia de 22 de diciembre de 1995; <u>Colegio de Opticos de P.R.</u> v. <u>Vani Visual</u>, 124 D.P.R. 559 (1989). También hemos resuelto nuestra abstención en controversias que constituyan cuestiones políticas. <u>P.P.D.</u> v. <u>Peña Clos</u>, Opinión y Sentencia de 17 de mayo de 1996; <u>Pueblo International, Inc.</u> v. <u>Rivera Cruz</u>, 122 D.P.R. 703 (1988). De igual modo, resolvimos que no intervendremos en cuestiones que sean de carácter académico. <u>Asociación de Periodistas</u> v. <u>Martín González</u>, 127 D.P.R. 704 (1991).

     El listado anterior tiene carácter ejemplificativo de cómo este Tribunal, en múltiple ocasiones, ha

revisarlas. De igual modo, el Tribunal de Circuito de Apelaciones deberá abstenerse de revisar dichas resoluciones.

En consecuencia, la parte que pretenda impugnar tales resoluciones interlocutorias deberá esperar hasta la sentencia final e instar contra ella el recurso pertinente a base del alegado error cometido. De este modo se da cumplimiento a la médula del procedimiento analizado y, por otro lado, no queda totalmente desvirtuado el principio de economía procesal ya que, si tenemos en cuenta la rapidez con que sobrevienen los escasos eventos procesales previstos por la Ley Núm. 2[25], veremos que la parte podrá revisar en tiempo cercano los errores cometidos.

Ahora bien, la norma que hoy establecemos no es absoluta. En aquellos casos en que la resolución interlocutoria que se pretenda impugnar haya sido dictada por el tribunal de instancia de forma *ultra vires,* sin jurisdicción, este Tribunal o el Tribunal de Circuito de Apelaciones --según corresponda-- sí mantendrá y ejercerá su facultad para revisarla vía certiorari.[26] En

---

autolimitado tanto su facultad revisora como la capacidad para resolver casos de los tribunales inferiores.
[25] Ibid.

[26] Alega la peticionaria que en Mercado Cintrón v. ZETA, supra., revisamos una resolución interlocutoria dictada por el tribunal de instancia en un procedimiento sumario de reclamación de salarios. Señalamos en este punto que en aquel momento dijimos que "... el Tribunal no tenía jurisdicción para actuar como lo hizo..."; por lo tanto,

ese sentido, resolvemos acorde a nuestra jurisprudencia en el ámbito administrativo, en que establecimos:

> "Si una agencia claramente no tiene jurisdicción para adjudicar un caso, su actuación es ultra vires. Sería injusto requerir que una parte tenga que litigar un caso en una agencia sin jurisdicción únicamente para cumplir con el requisito de finalidad." <u>Junta Examinadora de Tecnólogos Médicos</u> v. <u>Anneris Elías y otros</u>, Opinión y sentencia de 26 de noviembre de 1997.

Así pues, <u>concluimos que, con el objetivo de salvaguardar la intención legislativa, autolimitamos nuestra facultad revisora, y la del Tribunal de Circuito de Apelaciones, en aquellos casos de resoluciones interlocutorias dictadas al amparo de la Ley Núm. 2 con excepción de aquellos supuestos en que la misma se haya dictado sin jurisdicción por el tribunal de instancia y en aquellos casos extremos en los cuales los fines de la justicia requieran la intervención del foro apelativo</u>; esto es, en aquellos casos extremos en que la revisión inmediata, en esa etapa, disponga del caso, o su pronta disposición, en forma definitiva o cuando dicha revisión inmediata tenga el efecto de evitar una "grave injusticia" (miscariage of justice").


                                   III

Atendidos los hechos específicos del caso de autos, notamos que se impugna ante nos, vía certiorari, una resolución interlocutoria dictada por el tribunal de

aquella actuación fue acorde a la excepción a la norma

instancia, en el seno de un procedimiento de reclamación de salarios instado bajo la Ley Núm. 2, mediante la cual se autorizó la toma de una deposición a dos testigos anunciados por la parte querellada, Antilles Shipping, Inc. Si aplicáramos la norma que acabamos de establecer, procedería que nos abstuviéramos de conocer del recurso de certiorari interpuesto debido a que la resolución impugnada es una interlocutoria, dictada con jurisdicción por el tribunal de instancia y que no es un caso extremo.

Ahora bien, en este punto debemos recordar nuestra jurisprudencia referente a la aplicación, retroactiva o prospectiva, de las nuevas normas jurisprudenciales. En ese sentido, en <u>Quiles Rodríguez</u> v. <u>Superintendente de la Policía</u>, Opinión y Sentencia de 2 de noviembre de 1995, establecimos:

> "Una decisión judicial puede tener tanto efecto retroactivo como prospectivo...
>
> Hemos establecido ya que <u>son los tribunales mismos los llamados a determinar si una decisión judicial se aplicará o no retroactivamente</u>. En el ejercicio de esta discreción son fundamentales las consideraciones de política pública y orden social, ...
>
> Anteriormente hemos reconocido como <u>criterios rectores al momento de declarar la retroactividad de una norma jurisprudencial los siguientes</u>: (1) <u>el propósito que persigue la nueva regla a los fines de determinar si la retroactividad de la misma lo adelanta</u>; (2) <u>la confianza que se depositó en la antigua norma</u>; y, (3) <u>el efecto de la nueva regla en la administración de la justicia</u>. Ello no obstante, la determinación última descansará en las consideraciones de índole social, a la luz

que acabamos de establecer.

> de los hechos y circunstancias particulares de cada caso. *Gorbea Vallés v. Registrador, supra; Pueblo v. Báez Cintrón*, 102 D.P.R. 30 (1974); *Pueblo v. Cruz Jiménez*, 99 D.P.R. 565 (1971)."
> (Énfasis suplido.)

Al aplicar los criterios que acabamos de enumerar, determinantes de la retroactividad o prospectividad de una norma, al caso ante nuestra consideración llegamos a la conclusión de que la norma establecida en el presente caso <u>no</u> debe aplicarse a los hechos del mismo. El fundamento es sencillo: el propósito que persigue la nueva regla —mantener la característica esencial del procedimiento, su sumariedad y celeridad— no se consigue en el caso ante nuestra consideración, aún cuando aplicáramos dicha norma. Es decir, el caso que se halla ante nos se inició en el tribunal de instancia el 21 de diciembre de 1993, fecha en que los recurridos radicaron una querella contra su patrono al amparo de la Ley Núm. 2.[27] A nadie le debe caber la menor duda de que en el presente caso el procedimiento ha perdido su esencia sumaria debido, precisamente, al tiempo que ha tomado la resolución final del asunto planteado en este recurso. Por ello, aunque en este momento resolviéramos que, según hemos establecido, este Tribunal debe abstenerse de revisar la resolución interlocutoria impugnada, no se estaría cumpliendo el propósito que pretende la norma creada. En otras palabras, resolver que debemos

---

[27] Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 L.P.R.A. secs. 3118 <u>et seq</u>.

autorrestringir nuestra capacidad para revisar y devolver el caso a instancia no adelantaría la sumariedad del proceso, debido a que ya ha perdido tal característica. Por el contrario, tal curso de acción propiciaría que con posterioridad a la sentencia final volviera a plantearse ante los tribunales, vía apelación, la cuestión formulada en el presente recurso.

Por todo lo anterior, resolvemos que la norma instituida en el presente caso, al efecto de que no revisaremos las resoluciones interlocutorias dictadas en el seno de un procedimiento sumario de reclamación de salarios excepto cuando se dicten sin jurisdicción, será aplicable, de manera prospectiva, a todos aquellos recursos que se radiquen de hoy en adelante.[28]

IV

A tenor con lo señalado en el apartado anterior, procedemos a considerar el señalamiento de error planteado por la peticionaria, que lee como sigue:

"Conforme lo dispuesto en la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 L.P.R.A. 3118, erró el Tribunal Superior al

---

[28] Los certioraris que a la fecha de esta Sentencia se hallen pendientes de resolución, ya sea ante este Tribunal o ante el Tribunal de Circuito de Apelaciones, serán resueltos por los mismos fundamentos por los que procedemos a revisar en el presente caso. Sin embargo, en aquellos casos que se radiquen de este día en adelante, el Tribunal de Circuito de Apelaciones --que es el tribunal competente actualmente para revisar las resoluciones de instancia-- deberá abstenerse de revisar las resoluciones interlocutorias dictadas bajo el procedimiento sumario de reclamación de salarios.

autorizar la toma de deposición a la Sra. Mayra Pérez y Srta. Ana Sánchez, habiendo los querellantes-recurridos seleccionado el interrogatorio como el mecanismo de descubrimiento a utilizar, y en efecto notificado un interrogatorio a la querellada-recurrente."

La Sección 3 de la Ley Núm. 2[29] establece, en torno a los mecanismos de descubrimiento de prueba, que:

"... ninguna de las partes podrá someter más de un interrogatorio o deposición ni podrá tomar una deposición <u>a la otra parte</u> después que le haya sometido un interrogatorio, ni someterle un interrogatorio después que le haya tomado una deposición, excepto que medien circunstancias excepcionales que a juicio del tribunal justifiquen la concesión de otro interrogatorio u otra deposición. No se permitirá la toma de deposición <u>a los testigos</u> sin la autorización del tribunal, previa determinación de la necesidad de utilizar dicho procedimiento." (Énfasis suplido.)

Esta disposición surge a raíz de la preocupación del legislador por el hecho de que la interpretación que este Tribunal dio a la Ley anterior sobre reclamación de salarios, Ley Núm. 10 de 14 de noviembre de 1917, permitía que el patrono realizara un descubrimiento de prueba tan completo como permitían las Reglas de Procedimiento Civil. El legislador entendió que el uso de diferentes y múltiples mecanismos de descubrimiento de prueba, en el seno del procedimiento que establece la Ley Núm. 2[30], retardaba mucho el proceso y podía ser usado por los abogados de los patronos como una táctica dilatoria

---

[29] Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 L.P.R.A. secs. 3120.
[30] Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 L.P.R.A. secs. 3118 <u>et seq</u>.

del mismo.[31]

_____

[31] Esa preocupación del legislador surge del historial
legislativo de la Ley Núm. 2 de 17 de octubre de 1961,
según enmendada, 32 L.P.R.A. secs. 3118 et seq. En los
debates celebrados en torno al proyecto de dicha ley, P.
del S. 194, consta lo siguiente:

"Hasta este momento, antes de aprobarse este
Proyecto, prevalece una opinión del Tribunal Supremo
de Puerto Rico interpretando la Ley vigente en el
sentido de que en pleitos de reclamaciones de
salarios cualquiera de las partes, especialmente el
demandado, el patrono, tiene el derecho a utilizar
ciertos procedimientos que son aplicables a los
pleitos ordinarios generales, y especialmente que
tiene derecho a interponer interrogatorios a las
partes, deposiciones, ciertas peticiones de
información.

Uno de los propósitos del Proyecto es el
reducir la efectividad de la aplicación del Tribunal
Supremo, digo, aunque el Tribunal Supremo haya
resuelto en esa forma, se basa en la Ley vigente, y
nosotros podemos enmendar la Ley. Y el propósito
esencial del Proyecto es precisamente que se ponga
un límite a esos remedios que ahora tiene, bajo la
interpretación del Supremo, el patrono; o sea, que
si se ponen varios interrogatorios, que habría el
derecho teórico, pues eso retarda mucho el
procedimiento y puede caer dentro de las tácticas
dilatorias de los abogados de los patronos -pedir
interrogatorios, pedir deposiciones, examen de
documentos, etcétera.

El Proyecto en otra parte dice que el derecho a
interrogatorio debe estar limitado a un solo
interrogatorio, y eso la Comisión de lo Jurídico no
lo ha querido enmendar, sino que quede en pie, tal
como está  en el Proyecto -un interrogatorio o una
deposición-." (Énfasis suplido.) Diario de Sesiones,
1961, pág. 194, 29 de agosto de 1961.

En el mismo sentido, posteriormente se reiteró:

"La Ley Núm. 10 de 1917 prescribe que en los
casos que se tramiten con arreglo a la misma, se
aplicarán las Reglas de Enjuiciamiento Civil en toda
acción que no esté en conflicto con las
disposiciones específicas del estatuto. En virtud de
esa disposición, según la misma ha sido interpretada
por nuestro Tribunal Supremo en el caso citado, los
patronos demandados pueden valerse de todos los

Por los fundamentos anteriores, el legislador decidió limitar el uso de los mecanismos de descubrimiento de prueba en la forma que expondremos a continuación. Por un lado, la Sección 3 de la Ley Núm. 2[32] establece que no podrá someterse <u>a la otra parte</u> más de un interrogatorio o deposición ni podrá tomársele una deposición después de haberle sometido un interrogatorio y viceversa, con la única excepción de que medien circunstancias excepcionales que a juicio del tribunal justifiquen otra deposición o interrogatorio.

Como se puede apreciar, la limitación expresa de la Ley en cuanto al número de interrogatorios o deposiciones

---

medios de descubrimiento de prueba dispuestos por las reglas de Procedimiento Civil para el Tribunal General de Justicia, a saber, disposiciones, interrogatorios, descubrimientos y producción de documentos y objetos para ser inspeccionados, copiados o fotografiados, exámenes físicos y mentales de personas, y admisiones de hecho y de autenticidad de documentos. <u>Como resultado de la decisión del Tribunal Supremo a que hemos hecho referencia, los patronos querellados en los numerosos casos que tiene pendientes en corte este Departamento, se están valiendo de varios de esos medios de descubrimiento de pruebas, dando lugar a una considerable dilación en la tramitación de las reclamaciones y a grandes inconvenientes y molestias a los abogados del Departamento y a los trabajadores concernidos, amén de la enorme cantidad de trabajo adicional que ello representa para los abogados del obrero.</u>

<u>Para corregir o remediar esa situación, sin privar a los patronos de medios de descubrimiento de pruebas, por uno de los cambios que el anteproyecto se propone introducir al procedimiento, se dispone que cada parte sólo podrá someter un interrogatorio y viceversa;</u> ..." (Énfasis suplido.) Diario de Sesiones, 1961, pág. 1709, 15 de septiembre de 1961.

[32] 32 L.P.R.A. sec. 3120.

que pueden tomarse se refiere a aquellos que se dirigen a la parte en el pleito. Así surge claramente tanto de la letra de la Ley como del historial legislativo de la misma, en el que consta lo siguiente:

> "Se limita al litigante, además, a someter un solo interrogatorio, o una sola deposición no permitiéndosele tomar deposición a la parte adversa si ya le ha sometido un interrogatorio y viceversa." (Énfasis suplido) Diario de Sesiones, 1961, pág. 155, 24 de agosto de 1961.

Teniendo presente que la prohibición analizada se refiere únicamente a la parte, veamos la definición que del concepto procesal de "parte" ofrece el profesor Hernández Colón:

> "Parte es la persona interesada que el derecho procesal o material legítima [sic] para formular una acción o para oponerse a ella ante un órgano jurisdiccional. En el procedimiento contencioso, llámese parte demandante o sencillamente demandante o parte actora o simplemente actor, al que presenta la demanda. Es parte demandada aquél contra quien se dirige la demanda..." R. Hernández Colón, Práctica jurídica de Puerto Rico, Derecho procesal civil, San Juan, Michie of Puerto Rico, Inc., 1997, pág. 86.

Como podemos apreciar, se define a la parte como aquel sujeto que tiene legitimación para instar una acción u oponerse a ella ante un Tribunal. De lo anterior debe concluirse que los testigos no quedan incluidos en el concepto de "parte", por lo que la prohibición establecida en la Sección 3 de la Ley Núm. 2[33] en el sentido de limitar el descubrimiento de prueba a un único

mecanismo, deposición o interrogatorio, sólo se refiere a aquel descubrimiento que se realice a través de mecanismos dirigidos a la parte en el pleito y no a los posibles testigos.[34]

Diferente regulación afecta a estos últimos. Así, la propia Sección 3 establece que "[n]o se permitirá la toma de deposición a los testigos sin la autorización del tribunal, previa determinación de la necesidad de utilizar dicho procedimiento". Por lo tanto, de una interpretación literal[35] de la Sección 3 de la Ley Núm. 2

---

[33] Ibid.

[34] En este punto, es importante tener presente que las reglas de procedimiento civil no permiten el descubrimiento de prueba por medio de interrogatorios dirigidos a testigos; ello, porque dicho mecanismo de descubrimiento de prueba sólo está disponible para las partes del pleito. Regla 30.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III R 30.1.

[35] Procede una interpretación literal de la Sección 3, 32 L.P.R.A. sec. 3120, puesto que la letra de la misma es clara. En ese sentido, cumplimos con la norma de interpretación que consta en el Artículo 14 de nuestro Código Civil, 31 L.P.R.A. sec. 14, la cual establece:

> "Cuando la ley es clara libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir con su espíritu".

Tanto las Opiniones del Secretario de Justicia como nuestra jurisprudencia reafirman este principio interpretativo. Véase: Irizarry v. Registrador, 61 D.P.R. 74 (1942); Caguas Bus Line v. Sierra, 73 D.P.R. 743 (1952); Clínica Juliá v. Sec. De Hacienda, 76 D.P.R. 16 (1954); Meléndez v. Tribunal Superior, 90 D.P.R. 65 (1964); Román v. Superintendente de la Policía, 93 D.P.R. 685 (1966); Municipio de San Juan v. Banco Gubernamental de Fomento, Opinión y Sentencia de 21 de mayo de 1996; Lasalle v. Junta de Directores A.C.C.A., Opinión y Sentencia de 5 de junio de 1996; Alejandro v. E.L.A., Opinión y Sentencia de 4 de octubre de 1996. Véanse también las Opiniones del Secretario de Justicia Núms. 1982-8, 1982-2, 1987-22, 1987-24, 1988-35, 1995-30.

surge que la única limitación que la Ley establece respecto a la toma de deposiciones a testigos es que conste una autorización previa del tribunal, basada en la necesidad de utilizar dicho procedimiento.[36] Sin embargo, dicha regulación no impide a una parte deponer a un testigo aunque ya se haya usado el mecanismo del interrogatorio respecto a la parte adversa.

Por otra parte, en atención a las circunstancias particulares del presente caso, es menester señalar que en aquellos pleitos en que una corporación es la parte querellada y la misma está representada por su presidente, su gerente, su agente residente o su oficial principal, dichas personas serán consideradas como que comparecen en representación de una parte, o sea en representación de la corporación querellada. En el caso de autos, las personas que la parte querellante interesa deponer no ocupan estas posiciones y, aunque trabajan para la empresa, no han sido demandadas ni en su capacidad personal ni en representación de la corporación; razón por la cual no pueden ser consideradas como parte, sino como testigos de una de ellas.

V

---

[36] Dicha limitación está establecida en la Sección 3 de la Ley Núm. 2 de 17 de octubre de 1961, 32 L.P.R.A. sec. 3120 y reafirmada por nuestra jurisprudencia. Srio. del Trabajo v. J.C. Penney Co., Inc., supra, página 672.

Aclarada la norma establecida, respecto a los mecanismos de descubrimiento de prueba, aplicamos la misma a los hechos del caso de autos. Como vimos, el 17 de febrero de 1994 los querellantes notificaron a su patrono, el querellado Antilles Shipping, un pliego de interrogatorio que fue contestado por éste en mayo de 1994. En dicha contestación se incluyó, tal como requería el interrogatorio, un breve resumen de lo que declararían en la vista en su fondo del caso varios posibles testigos. A base de ello, los querellantes solicitaron al tribunal de instancia autorización para tomar una deposición a dos de los posibles testigos anunciados, la Sra. Mayra Pérez y la Srta. Ana Sánchez, contralor y agente de abordaje de Antilles Shipping respectivamente. Conforme concluimos anteriormente, la única limitación que tiene quien pretende la deposición de un testigo es conseguir la autorización previa del tribunal, la cual debe estar basada en una determinación de la necesidad de usar el mecanismo de descubrimiento de prueba solicitado. Veamos si se cumplió esta exigencia.

Los recurridos, en su moción solicitando autorización para la toma de deposición, señalaron que "[l]os querellantes [tenían] interés en deponer a la señora Mayra Pérez y Srta. Ana Sánchez, tanto para el caso de discrimen como en el caso de horas extras...". Por otro lado, la orden del tribunal de instancia autorizando dichas deposiciones no contiene ninguna

determinación _expresa_ respecto a la necesidad de usar dicho mecanismo de descubrimiento de prueba adicional en relación con esos dos testigos. Arguye la parte peticionaria que el tribunal de instancia abusó de su discreción al permitir las deposiciones de los testigos puesto que no se justificó la necesidad de las mismas y no se le concedió término para oponerse a la concesión de éstas. No le asiste la razón.

En el presente caso, de la propia situación de hechos se desprende que los querellantes tenían gran necesidad de deponer a las referidas testigos en vista de que eran funcionarias de alto nivel del patrono, las cuales con mucha probabilidad tenían conocimiento personal sobre los méritos de las reclamaciones de los querellantes. A pesar de que el foro sentenciador no emitió una determinación _expresa_ acerca de la necesidad que tenía la parte querellante de deponer a las testigos en cuestión, es forzoso concluir que al autorizar las deposiciones el tribunal de instancia realizó una determinación _implícita_ de que las mismas eran necesarias. Por esta razón, somos del criterio que no abusó de su discreción el tribunal sentenciador al permitir la toma de la deposición. Aclaramos, no obstante, que en el futuro la mejor práctica es que el foro de instancia haga la determinación de necesidad expresamente.

Por los fundamentos anteriormente expuestos, procede dictar Sentencia confirmatoria de la resolución recurrida y devolver el caso al Tribunal de Primera Instancia para que resuelva de conformidad con lo aquí expresado.


                    FRANCISCO REBOLLO LÓPEZ
                         Juez Asociado

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

Rafael Dávila y Benjamín
Rivera

    Querellantes-Recurridos

       vs.               CE-94-682        CERTIORARI

Antilles Shipping, Inc.

    Querellado-Recurrente

SENTENCIA

San Juan, Puerto Rico, a 12 de febrero de 1999

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia confirmatoria de la resolución emitida por el tribunal de instancia, devolviéndose el caso a dicho foro para procedimientos ulteriores consistentes con lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal.

Isabel Llompart Zeno
**Secretaria del Tribunal Supremo**